IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

TODD L. HOLLAN,          )
                     )
           Plaintiff,    )
                     )
vs.                  )      Case No. 10-3133-CV-S-ODS
                     )
MICHAEL J. ASTRUE,     )
Commissioner of Social Security.  )
                     )

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for child's insurance, disability, and supplemental security income benefits.  The Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff was born in March 1974, and failed to complete the seventh grade. From 1985 to 1992 he worked for his father as a carpet layer helper.  He applied for disability and supplemental security income benefits on July 10, 2007, alleging a disability onset date of January 1, 1996.  Because the alleged onset date was before Plaintiff turned twenty-two, on August 7, 2007, he added an application for child's insurance benefits.

Plaintiff began abusing alcohol at age 15 and began abusing Oxycontin at age 20.  At one point time Plaintiff was spending over $3,000 per month to support his drug habit.  The Record also contains evidence that Plaintiff used illegal drugs, principally methamphetamine.  The ALJ concluded that Plaintiff suffered from substance abuse addiction disorder, anxiety disorder, and paranoid personality disorder.  He noted Plaintiff's allegations of suffering from migraines and Hepatitis C, but found these conditions to be non-severe because the "medical evidence does not document any

ongoing treatment for migraines or Hepatitis.  Nor does the record indicate that these ailments have significantly interfered with the claimant's ability to perform basic work activities . . . ."  R. at 12.  The ALJ then held that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but lacked the ability to respond to supervision, co-workers, or the public on a sustained basis, maintain persistence and pace on simple tasks or get to work regularly and remain for an entire workday.  The ALJ also held Plaintiff retained the ability to understand, remember, and carry out simple instructions.  With these limitations, and in light of a vocational expert's testimony, Plaintiff was unable to return to his past work or perform any other work in the economy.  R. at 13-16.

The ALJ then considered Plaintiff's functional capacity if he were not abusing drugs and alcohol.  In doing so, he considered each of the mental health professionals and doctors who had treated or evaluated Plaintiff.

Joan Bender, a psychologist, evaluated Plaintiff in September 2003.  Plaintiff reported his "long-standing pattern is to drink a fifth or more of bourbon and up to a 12-pack of beer per day.  He begins drinking as soon as he gets up, if alcohol is available.  He drinks to the point of passing out . . . ."  Plaintiff's daily activities primarily consisted of waking at noon and procuring and drinking alcohol.  In describing the effect of substance abuse on Plaintiff's condition, Dr. Bender wrote as follows:

> Todd . . . appears to have Social Phobia, and Depressive Disorder NOS (chronic depressed mood, worse in last month with loss of relationship and living circumstances, and likely the substance abuse plays a significant role in mood fluctuations).  It is hard to predict how Todd would function were he to stop all substance abuse for an extended period of time.  It is likely that he would continue to have the anxiety and depression symptoms to some extent.  He has never had treatment for these, and it is quite possible that treatment would be helpful to him.  I also wonder how much of the anxiety/depression is connected to withdrawal cycles.
> Were Todd to recover from substance abuse, he likely could understand and recall at least simple tasks.  He could probably concentrate and persist on simple tasks.  He would most likely not tolerate much contact with the general public, but could probably deal with a small

number of coworkers and a supervisor.  He could adapt to change and appears able to manage his own funds.

R. at 196-97.

Another psychologist, Sara Hollis, evaluated Plaintiff on July 19, 2007.  At this time, Plaintiff was attending Alcoholics Anonymous (although he "slipped" the week prior and drank a pint of vodka), was on methadone, and had not used methamphetamine or pain pills in over a year.  In addition to alcohol and drug dependance, Dr. Hollis determined Plaintiff suffered from Anxiety Disorder, Paranoid Personality Disorder, and Antisocial Traits.  She concluded Plaintiff was not disabled because "he does seem able to perform functions required for simple to moderately complex tasks.  He might require some limitation in social contact due to his anxiety."  She assessed Plaintiff's GAF score at 68.  R. at 230-31.

A consulting psychologist (Kenneth Burstin) prepared a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique Form ("PERT") later in September 2007.  The PERT reflects Plaintiff suffers from substance addiction, anxiety or social phobia, paranoia, and antisocial traits, but did not satisfy the requirements for a listed impairment.  R. at 254-64.  The RFC Assessment indicates Plaintiff is moderately limited in his ability to understand, remember and carry out detailed instructions and interact appropriately with the general public.  It also repeats Dr. Hollis' assessment.  R. at 251-53.

In the Fall of 2008, Plaintiff was receiving treatment (probably counseling) at Burrell Behavioral Health Center; the precise date he began receiving treatment from this facility is not clear.  On September 23, 2008, it was noted that Plaintiff was depressed but his mental state was within normal limits.  His daily activities consisted of going to the methadone clinic and watching television.  The counselor set two goals for Plaintiff: "1) get out of the house 1 x a day and take a walk.  Going to the methadone clinic doesn't count. 2) call Voc Rehab and check on job training and getting a GED." On October 9, Plaintiff was again depressed but otherwise within normal limits mentally. He reported no progress on meeting the goals established at the last meeting and "said

he didn't want to set any goals or change." Eventually, Plaintiff "stormed out," and there are no further records form Burrell Behavioral Health Center. R. at 270-72.

Meanwhile, in July 2007 (the day before seeing Dr. Hollis), Plaintiff went to the Springfield Medical Clinic for treatment of his substance abuse disorder. In early September 2007, Dr. Mark Carlson, the clinic's director, wrote a one-paragraph note confirming Plaintiff's treatment at the clinic. Dr. Carlson noted that "[p]roperly managed, this disorder does not pose any limits to one's ability to perform the normal duties of employment or the functions of effective personal living. Co-occuring [sic] disorders may exist, but are not formally treated at this facility." R. at 234. Plaintiff also received counseling; his initial counselor left the facility in January 2008, at which time Plaintiff began seeing Rachael Edmunds. Counseling sessions were initially held weekly, but later were held on a monthly and "as needed" basis. R. at 276.

There are a total of four pages of treatment notes from Dr. Carlson, reflecting visits on: July 18, 2007, July 19, 2007, August 16, 2007, July 22, 2008, and July 14, 2009. The latter two visits appear to be for annual exams; none of the treatment notes provide any details about Plaintiff's condition or prognosis. There are no treatment notes provided by Ms. Edmunds.

Dr. Carlson completed a Medical Source Statement ("MSS") on August 4, 2009, purporting to cover the time period from January 28, 2008, to the date of the MSS. He checked boxes indicating Plaintiff is markedly limited in every category except in his ability to (1) remember locations and procedures, (2) remember, understand and carry out simple instructions, and (3) interact with the public. A statement appears at the end of the two-page MSS declaring that "[i]f drug addiction and/or alcoholism is a diagnosis, this statement sets forth the limitations remaining if the claimant stopped using drugs and/or alcohol." R. at 277-78. Ms. Edmunds provided a one-paragraph letter declaring that Plaintiff "continues to have difficulty being around other people and he would have difficulty functioning in a job environment due to overwhelming anxiety." R. at 276.

The ALJ noted Dr. Bender evaluated Plaintiff at a time when Plaintiff was receiving treatment but not adhering to it very well. While she could not predict with certainty how Plaintiff's condition would change if he were to stop abusing drugs and

4

alcohol, she rendered an opinion indicating his condition would improve. Dr. Hollis evaluated Plaintiff at a time when Plaintiff claimed to be sober, and her evaluation indicated limitations that were far less severe than those present when Plaintiff was abusing drugs and alcohol. The counselor at Burrell Behavioral Health not only indicated Plaintiff could work, but recommended that Plaintiff make an effort to work as a part of his recovery effort. Plaintiff declined to do so.

With respect to Dr. Carlson and Ms. Edmunds, the ALJ noted that neither of them offered any support for their conclusions. There were no explanations, and there were no contemporaneous treatment notes. Dr. Carlson's opinion was further undermined by his statement that (1) generally, opioid dependence could be treated effectively and (2) his facility did not treat or address unrelated ailments. R. at 19-20.

The ALJ concluded that if Plaintiff stopped using drugs and alcohol he would be limited to simple tasks and instructions and required an environment that required no more than occasional interaction with the public, supervisors, and coworkers. While this left Plaintiff unable to return to his past work, the ALJ found (based on testimony from a vocational expert) that Plaintiff could work as a cleaner or housekeeper. R. at 22.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

## A.  Physical Limitations

Plaintiff argues the ALJ erred in failing to consider the effects of his migraine headaches and Hepatitis C.  Plaintiff contends he contracted Hepatitis C when he was thirteen years old and has been treated for this condition.  While true, merely having a condition does not mean the condition imposes more than minimal impact on a claimant's ability to work.

There are no medical records regarding migraine headaches.  There is a record from September 11, 2007, indicating Plaintiff had experienced daily bloating and occasional pain over the preceding month.  R. at 239.  Pain does not automatically result in more than minimal impact on vocational ability, and there is nothing more in the Record.  Finally, Plaintiff testified that he had no physical limitations that precluded him from working.  R. at 35.  On this Record, the ALJ was entitled to conclude Plaintiff's migraines and Hepatitis C had no more than a minimal impact on Plaintiff's functional capacity.

## B.  Effects of Substance Abuse, Consideration of Medical Evidence, and Evaluation of Plaintiff's Daily Activities

Though separated in Plaintiff's Brief, these issues are (as he acknowledges) related.  Plaintiff faults the ALJ for (1) failing to defer to Dr. Carlson's and Ms. Edmunds' opinions and (2) improperly assessing Plaintiff's residual functional capacity when not abusing drugs and alcohol.

Generally speaking, a treating physician's opinion is entitled to deference.  This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record.  E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).  There are no treatment records from Ms. Edmunds, and scant records from Dr. Carlson.  The

treating physician rule does not require blind acceptance of a medical provider's opinion. With respect to Dr. Carlson, it is not even clear that he is a treating physician. He saw Plaintiff only five times – and only twice within the period covered by his MSS. He also indicated his clinic only treats substance abuse disorders, so Dr. Carlson was not Plaintiff's treating physician for other disorders.

The ALJ adhered to the proper procedure: he determined Plaintiff's limitations, including the effects of drug and alcohol abuse. he then "consider[ed] which limitations would remain when the effects of the substance abuse disorders are absent." Brueggemann v. Barnhart, 348 F.3d 689, 694-95 (8th Cir. 2003). Plaintiff bears the burden of demonstrating alcoholism and drug addiction are not contributing factors to his disability. Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). However, "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." Brueggemann, 348 F.3d at 693. This determination is particularly difficult when the claimant never stops abusing drugs or alcohol. However, in the present case, the ALJ was able to compare and contrast professional evaluations made when Plaintiff was and was not abusing drugs and alcohol. A comparison of Dr. Bender's opinions with Dr. Hollis' opinions, combined with the information from Burrell Behavioral Health Center, supports the ALJ's conclusions. Dr. Carlson and Ms. Edmunds provided conclusions, but no basis for accepting those conclusions.

The ALJ also relied on his evaluation of Plaintiff's daily activities to gain insight into Plaintiff's abilities when not using drugs and alcohol. The ALJ acknowledged Plaintiff's remaining ailments could cause paranoia, anxiety, difficulty interacting with others, lack of concentration – but not to the degree described by Plaintiff and not to the degree that Plaintiff could not work. He found Plaintiff's typical day consited of "watching television, walking the dog, maybe mowing the yard, having supper, and going to bed. He is able to prepare simple meals, assist with housework, and pay bills independently." R. at 20. These findings are supported by the Record. R. at 33-36, 38-39, 45. The ALJ indicated Plaintiff could probably do more but for the fact that he lives

7

with his mother, and the Record supports this conclusion as well.  For instance, Plaintiff testified that he does not do laundry – not because he can't, but because his mother won't let him.  R. at 38.  While Plaintiff testified he was utterly incapable of interacting with other people to any degree, the ALJ was not obligated to accept this testimony as true – and the Court is obligated to defer to the ALJ's credibility determinations so long as they are supported by substantial evidence in the Record as a whole.  E.g., Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010); Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010).  The ALJ found Plaintiff could work at a job that required no more than occasional interaction with the public, supervisors, and coworkers, and this conclusion is entitled to deference.

### III.  CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: February 7, 2011                    UNITED STATES DISTRICT COURT